UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **RAYMOND PIERSON**, <br><br> Petitioner, <br><br> v. <br><br> **WILLIS CHAPMAN**, <br><br> Respondent. | 2:19-CV-12100 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Raymond Pierson, who is serving a lengthy sentence at a Michigan correctional facility for his Washtenaw Circuit Court jury trial conviction of first-degree home invasion and other offenses, filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. The petition raises a single claim: the trial court deprived Pierson of his constitutional right to a fair and impartial judge when he informed the jury that he had found Pierson's statement to police to be admissible and by making critical and impatient comments directed at defense counsel during trial. The Court will deny the petition because the claim is procedurally defaulted and without merit. The Court will also deny a certificate of appealability.

# BACKGROUND

The Michigan Court of Appeals summarized the facts surrounding

Pierson's conviction:

> Deputy Sean Urban was patrolling the Bryn Mawr Apartment Complex in Washtenaw County during the early morning hours of July 25, 2010. As he was patrolling, Deputy Urban heard a commotion near the center of the complex. As the deputy approached the area, he observed two persons, later identified as defendant and Corey Taylor, on the ground in a physical altercation. Taylor was on top of defendant, and both defendant and Taylor had their hands on a firearm, which Deputy Urban identified as an AK-47.

> Deputy Urban radioed for backup and then approached the individuals. As he approached, both individuals stood up. Taylor put his hands in the air, but defendant started walking away. Defendant initially ignored Deputy Urban's verbal command to stop, but did eventually stop and placed his hands behind his back. Deputy Urban grabbed defendant's hands to place him in handcuffs, and defendant jerked away and started running. Deputy Urban pursued defendant and discharged a taser. The probes hit defendant in the back, and defendant fell to the ground. Deputy Urban then placed defendant in handcuffs and took him into custody. As Deputy Urban was escorting defendant to his patrol vehicle, defendant said, "I broke into the house but the guy had the gun."

> Deputy Urban turned defendant over to Deputy Daniel Buffa, who had just arrived on the scene. Deputy Buffa secured defendant in the backseat of his patrol vehicle and then advised defendant of his *Miranda* rights. Defendant agreed to waive his rights and talk to Deputy Buffa. Defendant admitted that he broke into Taylor's apartment but denied that the firearm was his. Defendant maintained

that that Taylor confronted him with the firearm when he entered the apartment. Deputies later discovered a vehicle in the parking lot that was registered to a woman with the same address as defendant. In the vehicle they found a black bag with two ammunition magazines, both of which fit the AK-47. When confronted with this information, defendant admitted that the firearm was his. Defendant told Deputy Buffa that Taylor was a drug dealer and that he went to Taylor's apartment with the firearm, intending to rob him.

Later that day, defendant was interviewed by Detective Grant Toth. Defendant gave Detective Toth a different version of events. Defendant told Detective Toth that Taylor was a drug dealer, and that Taylor called defendant and asked for a ride. Defendant stated that when he arrived at Taylor's apartment, Taylor placed a bag in his car and then went back to his apartment to get a shirt. Defendant stated that he opened the bag and discovered the firearm. Defendant told Detective Toth that he confronted Taylor about the firearm, at which point they began to fight. Based in part on defendant's statements, Detective Toth procured a search warrant for Taylor's apartment. During the search, police found a digital scale, Vicodin, ecstasy, several small bags of marijuana, $5,300 in cash, and a substance used to cut cocaine.

*People v. Pierson*, No. 309315, 2013 WL 6481167, at *1 (Mich. Ct. App. Dec. 10, 2013)(footnote omitted).

Following his conviction, Pierson filed a claim of appeal. His appointed appellate counsel filed an appellate brief in the Michigan Court of Appeals that raised six claims, none of which are being raised in his habeas petition. The Michigan Court of Appeals affirmed. *Pierson*,

2013 WL 6481167. Pierson filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims, but it was denied by standard order. *People v. Pierson*, 846 N.W.2d 568 (2014) (Table).

Pierson then filed a motion for relief from judgment, raising seven claims:

> I. The prosecutor committed misconduct by introducing other acts evidence which was prejudicial to the Defendant, depriving him of his state and federal Constitutional right to due process of law, robbing Defendant of a fair trial.
>
> II. Defendant's state and federal right to due process of law were violated, depriving Defendant of a fair trial when the court informed the jury of the existence and result of a suppression hearing concerning the admissibility of an alleged statement, requiring reversal of Defendant's conviction.
>
> III. The Court committed an abuse of discretion in declaring hearsay testimony to be admissible at a suppression hearing.
>
> IV. Defendant was deprived of his right to due process of law guaranteed by the state and federal Constitutions by a police officer destroying his interview notes.
>
> V. Trial counsel proved ineffective for failing to investigate and produce a witness who could have provided exculpatory evidence of an alibi. Defendant's conviction should be vacated.
>
> VI. Trial counsel proved ineffective by failing to object to the admission of other acts evidence and failure to move for a mistrial.

VII. Appellate counsel proved ineffective for failing to raise the issues contained her in this brief.

The second claim raised in the motion was premised on a different legal theory and was focused on a narrower factual basis than what now forms Pierson's current habeas claim. Pierson did not argue in his motion that the remark by the trial judge denied him his right to an impartial judge and constituted structural error. Nor did Pierson assert that the trial judge exhibited bias against him due to other critical and impatient comments directed at defense counsel. Rather, Pierson argued that informing the jury that his alleged statement to police was already ruled admissible constituted error under several Michigan cases, and the comment violated his right to have the jury determine whether he made the statement to police at all. (Brief in Support of Motion for Relief from Judgment, ECF No. 6-9, PageID.545-48; Defendant's Reply Brief, ECF No. 6-12, PageID.600.)

The trial court denied the motion. With respect to Pierson's second claim, the court found that the claim was barred from review for his failure to raise it on direct review and that it was without merit. (Order, ECF No. 6-13, PageID.627-30.)

Pierson filed an application for leave to appeal in the Michigan Court of Appeals, raising the same claims. The court granted the application with respect to Pierson's second claim and ordered further briefing. Pierson again did not present the state court with a structural-error claim that the trial judge was partial, and he supported his claim with the same legal theory he presented to the trial court. (Court of Appeals Brief, ECF No.6-18, PageID.891, 909-15.)

The Michigan Court of Appeals affirmed in a published opinion. *People v. Pierson*, 909 N.W.2d 274 (Mich. Ct. App. 2017). The concurring opinion contained the more thorough summary of facts surrounding the claim:

> Before trial, defendant moved to suppress his alleged (and allegedly unprompted) statement to police officers that "I broke into [the] house but the guy had the gun." The trial court held a *Walker* hearing and determined that the statement was admissible.
>
> ***
>
> Among the witnesses who testified at trial was one of the officers in question, and among the subjects on which he was questioned was the statement that the trial court had determined at the *Walker* hearing to be admissible. During the prosecution's redirect examination of the officer, the following colloquy occurred:
>
> > [Prosecutor]: Okay. Now, in terms of the statement that the defendant made to you, let me back up. I

6

believe on cross-examination you said you didn't question [defendant].

[Officer]: That's correct.

    * * *

[Prosecutor]: And I believe in terms of your testimony, you said he told you he was breaking into the apartment but that the guy pulled a gun on him; is that correct?

[Officer]: Yeah, that the guy had a gun.

[Prosecutor]: The guy had a gun. Now, can you explain when you give *Miranda* rights?

[Officer]: Anytime someone's not free to leave.

[Defense counsel]: Foundation.

[The Court]: You know what, I'm going to cut that part of it off here. The Court already held a hearing on this matter and I have ruled that the defendant was properly advised of his rights and that the statements that have been introduced are admissible. Go ahead.

[Defense counsel]: I'll object to that.

[The Court]: Fine. Go Ahead. It's true. Have a seat. Go ahead.

Shortly after this exchange, and during defense counsel's recross-examination of the officer, there was the following exchange:

[Defense counsel]: You appreciate the Court has ruled that statements by my client are admissible, correct?

[Officer]: I don't—

[Defense counsel]: He just said it. The Judge just said that.

[Officer]: The Judge said it. I don't know if I appreciate it.

[Defense counsel]: Okay. So my client gave a statement to you—

[The Court]: You know what, that doesn't matter either. So go ahead.

*Pierson*, 909 N.W.2d at 294-296 (Boonstra, J., concurring).

In the lead opinion, the Court found that the trial court's reference to its ruling on the admissibility of Pierson's statement to police constituted error under *People v. Gilbert*, 222 N.W.2d 305 (Mich. App. 1974) (trial court "would improperly impinge upon the province of the jury" by informing jury that a confession has been found to be voluntary), and *People v. Williams*, 207 N.W.2d 480, 483 (Mich. App. 1973)("If a trial judge instructs a jury that the court has held a separate hearing to determine the voluntariness of a statement made by the defendant, and further indicates that the statement was found to be voluntary, it is not

likely that the jury will thereafter decide that the statement was not made at all."). *Pierson*, 909 N.W.2d at 292. The Court went on to find, however, that the error was harmless under the facts of the case. *Id.*, 207 N.W.2d at 292-94. The concurring opinion agreed as to the result, finding that no error occurred. *Id.*, 207 N.W.2d at 294-302.

Pierson then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claim under the same theory. The Michigan Supreme Court appointed Pierson's present habeas counsel and ordered supplemental briefing. *People v. Pierson*, 913 N.W.2d 661 (Mich. 2018).

The supplemental brief filed by Pierson's present counsel raised the current version of the claim. Rather than assert that the trial court's statement regarding its prior ruling constituted mere trial error, counsel asserted for the first time that the remark evidenced judicial bias and denied Pierson his right to a fair and impartial judge. (Supplemental Brief, ECF No. 6-19, PageID.1262.) Moreover, the supplemental brief did not confine itself to the factual basis for the claim that was raised in the trial court and Court of Appeals. The brief also asserted that several additional impatient and critical comments made by the trial judge to

9

defense counsel supported the position that the judge was biased. (*Id.*, PageID.1292-96.) The brief went on the argue that because the denial of the right to an impartial judge is a structural error, any error could not have been harmless, thus undermining the basis for the Court of Appeals' decision. (*Id.*, PageID.1300.)

Following oral argument, the Michigan Supreme Court denied the application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Pierson*, 925 N.W.2d 203 (Mich. 2019)(Table).

Pierson then filed the instant petition, raising the claim on the same grounds that were presented to the Michigan Supreme Court in the supplemental brief.

## STANDARD OF REVIEW

Section 2254(d) of Title 28 of the United States Code, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, places strict limits on federal courts' authority to grant applications for a writ of habeas corpus by state prisoners. *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013). Section 2254(d) instructs that federal courts "shall not" grant a habeas petition

filed by a state prisoner with respect to any claim adjudicated on the merits by a state court, absent applicability of either of two specific exceptions. The first exception occurs if the state-court judgment "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The second exception applies if the state court judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The statute therefore requires a high degree of deference to state-court rulings and demands those decisions be given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Fundamentally, § 2254(d) casts federal habeas review as a safeguard against "extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (citation omitted).

## DISCUSSION

Pierson claims that by informing the jury that his statement to police was already ruled admissible, and by sparring with defense

counsel at other points of the trial, the trial judge exhibited bias that denied him his right to an impartial judge. Resolution of the claim is complicated by the fact that the legal and factual bases for Pierson's claim changed during state court proceedings as indicated above. No claim of judicial bias—a claim of structural error—was made to the trial court or the Court of Appeals. Nor did the claim refer to the other statements made by the trial judge to defense counsel at trial.

Respondent asserts that that the second version of the claim—which is the one presented in this action—does not satisfy the exhaustion requirement because it was not presented to the lower levels of state review. Furthermore, because no remedy exists to present this legal theory and expanded factual basis to all levels of state review, Respondent argues that the habeas claim should be deemed procedurally defaulted.

Pierson replies that the claim should be deemed exhausted because the central factual basis—the comment regarding the admissibility of the statement—was presented throughout the state courts, and that counsel cannot be faulted for buttressing the claim with a superior legal theory

than the one Pierson was able to develop on his own when he was proceeding pro se.

## A. Exhaustion and Procedural Default

At bottom, Pierson advances a claim for federal habeas review that he fairly presented for the first time to the state courts only in the Michigan Supreme Court. The exhaustion requirement prevents such a move. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (federal claim not exhausted when presented for the first time to State's highest court).

A state prisoner seeking federal habeas relief must first exhaust available state court remedies. 28 U.S.C. § 2254(b) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971). Exhaustion requires a habeas petitioner to "fairly present" the substance of each of his federal constitutional claims to each level of state review. *See O'Sullivan*, 526 U.S. at 845-47; *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (citing *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).

Contrary to Pierson's assertion, fair presentation requires that a claim be presented to the state courts under the same theory. *See Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987). This requires the federal habeas claim to be presented to the state courts on both the same factual and legal bases. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). "Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012); *see also Strother v. California*, 2005 U.S. Dist. LEXIS 26436, *4 (E.D. Cal. Nov 2, 2005) ("Because the petition for review did not identify judicial bias as a legal theory on which petitioner challenged the validity of his conviction, this claim is not exhausted.").

Here, Pierson did not present the judicial bias/structural error legal basis for his claim to either the trial court or the Michigan Court of Appeals. (Trial Court Brief, ECF No. 6-9, PageID.545-48; ECF No. 6-12, PageID.600, ECF 6-14, PageID.639-40; Court of Appeals Brief, ECF No.6-18, PageID.891, 909-15.) Nor did he raise the other sparring between the trial court and defense counsel as a basis for questioning the court's impartiality. (*Id.*) The presentation of the current legal and

14

factual bases for the claim for the first time in the state supreme court simply did not satisfy the exhaustion requirement. S*ee Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010)("[A]n issue has not been fairly presented when it is raised for the first time to the Michigan Supreme Court, and that court declines to exercise its right to discretionary review.").

In fact, this case highlights the rationale and importance of the exhaustion requirement. Pierson presented the Court of Appeals with a specific claim of trial error. The legal basis for the claim called for the Court of Appeals to determine whether the alleged error was harmless. *Pierson*, 909 N.W.2d at 292 ("[B]y the same extrapolation from established caselaw, such an error must be subject to review for harmlessness."); *People v. Kincaid*, 356 NW2d 4 (Mich. App. 1984)). By substituting in a claim of structural error, Pierson altered his claim into one that is not amenable to harmless error analysis.

Meanwhile, section 2254(d) calls for a habeas court to review the state court adjudication of a claim, and here the Court of Appeals issued the last explained decision amenable to review under that section. One can hardly fault the Court of Appeals for reviewing the claim for

15

harmlessness given that no structural-error claim was presented to it, yet Pierson asserts as a major premise for his argument that "the Michigan Court of Appeals incorrectly applied harmless-error analysis to a structural error." (Petition, ECF No. 1-1, PageID.31.) Had a claim of structural error via judicial bias been fairly presented to the Court of Appeals, there is every reason to believe the state court would have addressed it, and then this Court would have had a state court decision with which to apply § 2254(d). Allowing a habeas petitioner to alter the legal basis for a claim in such a manner after the state court issues an explained decision would be to allow an end-run around the exhaustion requirement and AEDPA's deferential standard of review. Pierson's judicial bias claim is unexhausted, and AEDPA requires strict enforcement of that requirement here.

Still worse for Pierson, where no avenue remains in the state courts to satisfy the exhaustion requirement, an unexhausted claim is deemed to be procedurally defaulted. *See, e.g., Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006). In other words, if the Court were to dismiss the petition on exhaustion grounds and send Pierson back to state court to present his judicial bias

16

claim to all levels of state review, the state courts would find the claim procedurally barred. Under Michigan law a criminal defendant generally has only one opportunity to pursue post-conviction relief. *See* Mich. Ct. R. 6.502(G)(1); *Wright v. Jackson*, No. 18-2443, 2019 WL 7372698, at *4 (6th Cir. Mar. 29, 2019) (finding procedural default where claims were unexhausted and petitioner had already filed one motion under Mich. Ct. R. 6.502(G)(1)). The few exceptions to this rule involving new laws or newly discovered facts do not apply. Accordingly, more than being simply unexhausted, Pierson's judicial bias claim is procedurally defaulted.

The Court may reach the merits of the defaulted claim only if Pierson establishes cause and prejudice or a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate cause, Pierson must demonstrate that some factor external to his defense impeded his efforts to exhaust his claim. *Id*.

Pierson does not acknowledge the default in his reply brief, so he does not attempt to establish cause to excuse it. Pierson's pro se status and ignorance of his rights—the factors mentioned in Pierson's reply brief to argue that the claim was exhausted—do not constitute cause for a failure to raise a claim in the state courts. *Hannah*, 49 F.3d at 1197

17

(6th Cir. 1995) (citing *Ewing v. McMackin*, 799 F.2d 1143, 1151 (6th Cir. 1986)).

Pierson also cannot establish that failure to review his claim would result in a fundamental miscarriage of justice. This narrow exception must accompany a credible claim of factual innocence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Pierson makes no such claim.

Accordingly, Pierson's judicial bias claim is barred from review, and he fails to demonstrate cause or actual innocence to overcome the default.

## B. Merits of Judicial Bias Claim

Alternatively, the claim is without merit. The Due Process Clause of the Fourteenth Amendment requires a fair trial in an impartial tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997); *In Re Murchison*, 349 U.S. 133 (1955). Trial judges have wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005). A trial judge's intervention in the conduct of a criminal trial must be significant both in its extent and the

18

degree to which it is adverse to the defendant before habeas relief will be warranted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown*, 358 F. Supp. 2d at 657. This is because the Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

The Court of Appeals found that it was error for the trial court to inform the jury that Pierson's statement to police had been ruled admissible. But as the exchange with the prosecutor and defense counsel quoted above shows, the erroneous ruling evidenced, at most, an expression of impatience, dissatisfaction, or annoyance at the direction of the prosecutor's questioning of the police officer and then of defense counsel's re-cross examination. So too, the other incidents cited by Pierson involved the court's attempts to focus the direction of questioning by defense counsel. The comments were blunt and impatient, but nothing in their content suggested to the jury that the court was biased against Pierson or had decided for himself that he was guilty. A trial judge may interject himself "into the trial, speak to counsel, and question witnesses

in order to … aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007).

As the Supreme Court has made abundantly clear, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Liteky*, 510 U.S. at 556. And that is all the record shows here: at worst, short-tempered efforts by the judge to control and move along the course of proceedings. Such comments are immune from a claim of judicial bias. *See United States v. Jones*, 747 F. App'x 348, 353-54 (6th Cir. 2018) (judicial bias claim rejected where "the district court's expressions of frustration and its interjections were imperfect attempts to run the trial in a focused and efficient manner."). Pierson's judicial bias claim is therefore without merit.

## CONCLUSION

As Pierson fails to demonstrate entitlement to habeas relief, the Court **DENIES** the petition for a writ of habeas corpus.

Furthermore, because reasonable jurists would not debate this result, the Court **DENIES** a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

Dated: August 29, 2022      s/Terrence G. Berg
                                    TERRENCE G. BERG
                                    UNITED STATES DISTRICT JUDGE